THE CATHOLIC FOREIGN MISSION SOCIETY OF AMERICA (INCORPORATED), Respondent, *v.* JOSEPH OUSSANI, Appellant, Impleaded with Others.

Real property — contract of sale — waiver by purchaser of provision that a certain incumbrance shall be removed or purchaser not obliged to take title — right of such purchaser to enforce specific performance — purchase of property by corporation — when resolution of board of directors insufficient to authorize president to purchase.

1. Resolutions adopted by the directors of a membership corporation to the effect that the president "be empowered to take charge of the fiscal affairs of the corporation" and that he "has authority to sign and execute all documents," standing alone and without other evidence, are not sufficient to authorize him to enter into an agreement for the purchase of real property by the corporation. (Membership Corporations Law, § 13; Cons. Laws, ch. 35.)

2. That the president of plaintiff contracted for the purchase of lands without authority from the corporation and hence that the corporation, as such, never contracted at all may be asserted under a general denial interposed by defendant, in an action brought by the corporation to enforce specific performance. Even were the rule to the contrary, an objection is waived by failure to urge it at the trial.

3. The fact that an agreement for purchase and sale of real property contains a provision that a certain incumbrance shall be

1

removed or the purchaser is to be "in no way obliged" does not affect his right to enforce specific performance if he expressly waives the condition. (*Palmer* v. *Gould*, 144 N. Y. 671, distinguished.)

*Catholic Foreign Mission Society* v. *Oussani*, 157 App. Div. 893, reversed.

(Argued March 22, 1915; decided May 4, 1915.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 11, 1913, modifying and affirming as modified a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*David Leventritt, Maxwell C. Katz* and *Otto C. Sommerich* for appellant. Inasmuch as the plaintiff in this action could not have been forced to take the property in an action for specific performance, if brought by the defendant Oussani, and inasmuch as the presence of mutuality in the agreement was dependent upon the happening of a subsequent event, which never took place, the plaintiff in the present action is not entitled to maintain an action for specific performance. (*Levin* v. *Dietz*, 194 N. Y. 376; *Benedict* v. *Lynch*, 1 Johns. Ch. 370; *Clason* v. *Bailey*, 14 Johns. 484; *Wadick* v. *Mace*, 191 N. Y. 1; *Ide* v. *Brown*, 178 N. Y. 26.) The contract before the court is not an option, but a contract dependent as regards its enforceability upon the happening of three events: (1) That the branch of the Longwood road be legally closed; (2) that it be transferred to the road below; (3) that this be effected within a week. In view of the language that plaintiff shall be " in no way obliged," these events do not constitute a condition or lack of mutuality that can be waived. (*Palmer* v. *Gould*, 144 N. Y. 671; *Lloyd* v. *Nowell*, L. R. [2 Ch. Div. 1895] 746; *Putnam* v. *Grace*, 161 Mass. 237; *Lighton* v. *City of Syracuse*, 188 N. Y. 499; *Corco-*

*ran* v. *White*, 117 Ill. 118.) The plaintiff has not shown that the agreement sued upon, or the alleged waiver, or the contract tendered pursuant to said agreement, or the bond and mortgage tendered pursuant to said agreement, was authorized by the concurring vote of at least two-thirds of the whole number of the board of directors of the plaintiff, as required by section 13 of the Membership Corporations Law. (*Dudley* v. *Congregation*, 138 N. Y. 451; *Beatty* v. *Marine Ins. Co.*, 2 Johns. 109.) The authority given by the board of directors to the president to sign and execute all documents is insufficient as evidence of authority to make a contract for the purchase of real estate, or to waive the conditions of any contract, or to execute any contract or a bond and mortgage. The authority is limited merely to signing documents in the ordinary course of the corporation's business, and if the corporation wants to purchase property and authorize its president to do so, it must do so by clear and specifically expressed language. (*Jacoby* v. *Pason*, 91 Hun, 480; *Holtsinger* v. *Nat. C. E. Bank*, 6 Abb. [N. S.] 292; *A. F. Ins. Co.* v. *Bay*, 4 N. Y. 1; *Porges* v. *U. S. M. & T. Co.*, 203 N. Y. 181; *Craighead* v. *Peterson*, 72 N. Y. 279.)

*J. Addison Young*, *William S. Beers* and *John K. M. Ewing* for respondent. The contract in question is an obligation, binding on both parties, specific performance of which can be enforced. (Pomeroy on Spec. Perf. [2d ed.] 241, 242, § 173; *Clark* v. *West*, 193 N. Y. 344; *Baldwin* v. *McGrath*, 90 App. Div. 199; *Hellmann* v. *City Trust S. D. & S. Co.*, 111 App. Div. 879; 132 App. Div. 151; *Birkett* v. *Nichols*, 184 N. Y. 315; *Arnold* v. *Union Salt Co.*, 186 N. Y. 501; *Thompson* v. *Poor*, 147 N. Y. 402; *Barnett* v. *Sussman*, 116 App. Div. 859; *Toplitz* v. *Bauer*, 161 N. Y. 325.) The question raised by appellant as to the authority of the president of the plaintiff to make the contract was not pleaded, and cannot now be raised

·by appellant. Such authority was sufficient and was recognized by the corporation. (*Gordon Malting Co.* v. *Bartels Brewing Co.*, 206 N. Y. 528.)

CARDOZO, J. The action is for specific performance. The defendant Oussani is the owner of.a tract of land in .Westchester county. He undertook to sell it to the plaintiff, a membership corporation. The plaintiff was represented by its president, Father Walsh. A memorandum of the terms of the agreement was put in writing, and signed. It is dated July 12, 1912. It calls for a conveyance of the land free from all incumbrances. In particular, it provides that a road known as the Longwood Road, which ran through the land, shall be closed. Unless this change can be made within one week, the plaintiff is to be " in no way obliged." The price is to be $45,000, of which $15,000 is to be paid in cash, and $30,000 by a purchase-money mortgage.

Longwood Road was a public highway, and the local authorities refused to close it. Father Walsh went to view ·the land on July 18, and again on the day following. His purpose was to ascertain whether the road would interfere with the construction of a building. He then stated to Oussani that he would waive the condition of the contract to the effect that the road must be closed. There is evidence from which the inference may be drawn that Oussani requested the waiver and approved of it. That the buyer's purpose might not be doubtful, a letter was mailed on July 19, in which Oussani was again informed that. there had been a waiver of the condition. On the following day he gave notice that he would not carry .out the sale. He had sold the property, it appears, at a .larger price to some one else. There was a tender of the money and of a purchase-money mortgage. The tender was rejected, and this action was begun.

The first question to be determined is whether there ever was a contract. The statute provides (Membership

Corporations Law [Consol. Laws, ch. 35], section 13): "No purchase, sale, mortgage or lease of real property shall be made by a membership corporation, unless ordered by the concurring vote of at least two-thirds of the whole number of its directors, provided, however, that when the whole number of directors is not less than twenty-one, the vote of a majority of the whole number shall be sufficient." The whole number of the plaintiff's directors was less than twenty-one. The concurring vote of at least two-thirds of the directors was, therefore, necessary before a purchase of real property could lawfully be made. The president had no authority to make such a purchase by virtue merely of his office. This is conceded. It is urged, however, that resolutions adopted by the directors on June 29, 1912, contain the requisite grant of power. We think that, unexplained, they fail of that effect. One resolution reads: "*Resolved,* that the president and vice-president be empowered to take charge of the fiscal affairs until the bylaws are adopted." This was not a grant of power to purchase land. It made the president and vice-president the fiscal officers of the corporation. That is an office which in most corporations is filled by a treasurer. The purchase and sale of real estate has no relation to its functions. But there is another resolution which reads: "*Resolved,* that the president has authority to sign and execute all documents." This does not mean that he may make any contract he pleases. It is not an attempt to delegate to him the entire powers of the board. It means that when contracts have been duly authorized, the president is to sign them. It touches, not the power to contract, but the form and manner of contracting. The command of the statute, that there must be a concurring vote of two-thirds of the directors, would be frittered away if we were to hold that a resolution at once so sweeping and so indefinite is a sufficient statement of their concurrence. Standing by itself and unexplained, the resolution does not confer the requisite

authority (*Holtsinger* v. *Nat. Corn Ex. Bank*, 6 Abb. [N. S.] 292; affd. in this court, 3 Alb. L. J. 305; *Jacoby & Co.* v. *Payson*, 91 Hun, 480).

It is urged for the plaintiff that the contract, though unauthorized when made, may be held to have been ratified. We find no evidence of ratification. The action was begun in August, 1912, and was tried in October of that year. Down to the time of the trial there had been no meeting of the directors since the making of the contract. They never ratified the contract collectively and as a board. They never ratified it, if that be possible (*People's Bank* v. *St. Anthony's R. C. Church*, 109 N. Y. 512), singly and as individuals. There is no evidence that two-thirds of the directors, or even one director, ever heard of the contract. All that the president did, either in making tender of the price or in prosecuting this action, was done of his own motion. By that time the seller had already repudiated the contract. Whether there could be an effective ratification after notice of Oussanni's withdrawal may be doubted. The case of *Bolton Partners* v. *Lambert*, L. R. [41 Ch. Div.] 295), which holds that ratification in such cases is possible, is inconsistent with many cases in our own country (Mechem on Agency [2d ed.], sections 514, 515; *Cowan* v. *Curran*, 216 Ill. 598; *Baldwin* v. *Schiappacasse*, 109 Mich. 170; *Kline Bros. Co.* v. *Royal Ins. Co.*, 192 Fed. Rep. 378, 387; *Atlanta Buggy Co.* v. *Hess Spring & Axle Co.*, 124 Ga. 338), and has not escaped criticism in England (Fry on Spec. Perf. [5th ed.] Appendix, Note A; Mechem, *supra; Fleming* v. *Bank of New Zealand*, L. R. [1900] A. C. 577, 587; *Matter of Tiedemann*, L. R. [1899] 2 Q. B. 66. See also: *Cook* v. *Tullis*, 18 Wall. 332; *Matter of Gloucester Municipal Election*, L. R. [1901] 1 K. B. 683). It is everywhere conceded, however, that ratification, if possible at all after notice of withdrawal, must be announced within a reasonable time (*Matter of Portuguese C. C. Mines*, L. R. [45 Ch. Div.] 16). That is true even though the action is

at law.   It is still more plainly true in equity, where the
right to specific performance is conditioned upon mutu-
ality of remedy.   When this action was begun, the
inchoate contract had not been made binding by the rati-
fication of the plaintiff's directors, and so far as the
record shows, it is not binding yet.

In thus holding that the resolution empowering the
president to sign all documents, does not confer authority
to purchase land, we limit ourselves to a construction of
the resolution standing alone and unexplained.   There is
nothing to show that a purchase of land was then con-
templated by the directors.   There is nothing to show
that they first assented to the project, and then, in order
to facilitate its execution, resolved that the president
should be empowered to sign the necessary documents.
If there was such assent, it may be established by evidence
of what was said at the meeting of the board, and the
meaning of the resolution may be explained and enlarged
accordingly.   A formal resolution is not the only evidence
of corporate action (*Young* v. *U. S. Mortgage & Trust
Co.*, 214 N. Y. 279, and cases there cited).   Everything
that was said and done, the entire setting of the occasion,
may help in determining the authority intended to be
conferred.   The plaintiff has not attempted to put the
setting of the occasion before us.   It has proved the bare
resolution and no more.   We are not to be understood as
holding that ampler evidence of the surrounding circum-
stances and of the discussion at the meeting may not
establish an authority which this record does not disclose.

If the directors are found on a new trial to have author-
ized the purchase, we think the plaintiff's right to a decree
of specific performance will follow.   The argument is
made that even though there was a contract, it lacks the
mutuality essential to relief in equity.   If the public
easement or right of way is not extinguished, the buyer,
by the terms of the contract, has the right to rescind.
We think the reservation of that right does not involve a

failure of the equitable remedy (*Levin* v. *Dietz*, 194 N. Y. 376). The Longwood Road was an incumbrance. Like any other incumbrance, it gave the buyer the right to rescind the contract and reject the title. But a buyer in such circumstances is not bound to rescind. He may waive the condition, and accept the title though defective. If he does, the seller may not refuse to convey because the buyer could not have been compelled to waive (*Bostwick* v. *Beach*, 103 N. Y. 414, 422). In this case the plaintiff did waive the condition. It announced its waiver while the contract was still in force. There had been no attempt by the seller up to that time to recede from his bargain. We think the waiver to be effective did not call for the seller's approval. There is evidence, however, that he not only approved of it, but induced it. The condition which was the subject-matter of the waiver, was for the benefit of the buyer solely. From the moment that the waiver was announced, the remedy was mutual (Fry on Spec. Perf. [5th ed.] p. 238; *Dyas* v. *Cruise*, 2 Jo. & Lat. 460, 487; *Beatson* v. *Nicholson*, 6 Jur. 620; *Hawksley* v. *Outram*, L. R. [1892] 3 Ch. 359; *Barker* v. *Cox*, L. R. [4 Ch. Div.] 464, 469). There may be an exception here to the general rule that mutuality must be judged of as at the date of the contract, but if so, it is as well established as the rule itself. *Palmer* v. *Gould* (144 N. Y. 671) holds nothing to the contrary. The opinion of Judge Gray in that case was not adopted by the court (144 N. Y. at 684), but if we assume its correctness, it is inapplicable here. All that it suggests is that partial performance may sometimes be refused where a vendee knowing of the defect has taken the chance of its removal, and where conveyance of a part interest would work a hardship to the vendor. (See 144 N. Y. at 682; also, *Hexter* v. *Pearce*, L. R. [1900] 1 Ch. 341, 345.) There is no such hardship here. The vendee is not exacting compensation for the broken condition. It has waived the condition altogether. If

the contract bound the plaintiff, the defendant must perform.

The plaintiff asks us to hold that the pleadings do not entitle the defendant to take advantage of the point that the plaintiff's president exceeded his authority. But the rule, we think, is otherwise. The defendant does not contend that the corporation itself is without power to buy the land. He does not contend that a contract apparently within the scope of the chartered powers has been made to promote a purpose foreign to those powers. That was the situation in *Gordon Malting Co.* v. *Bartels Brewing Co.* (206 N. Y. 528). He contends that the plaintiff has never contracted at all, because it has not spoken through the only agents authorized to speak for it. This may be proved under a denial of the contract (*Milbank* v. *Jones,* 141 N. Y. 340). Even if the rule were to the contrary, there was a waiver of the objection through the failure to urge it at the trial. The plaintiff put in evidence the resolution of the directors defining the powers of the president. It assumed the burden of proving his authority; the issue was tried and decided; and it is too late now to urge that because of some defect in the pleadings it was never really involved.

The judgment should be reversed and a new trial granted, with costs to abide the event.

WILLARD BARTLETT, Ch. J., HISCOCK, COLLIN, CUDDE-BACK, HOGAN and SEABURY, JJ., concur.

Judgment reversed, etc.